In re:

Fenton Sub Parcel D, LLC                                        Case No. BKY 11-44430
                              Debtor.                                    Chapter 11 Case

---

Bowles Sub Parcel D, LLC                                       Case No. BKY 11-44434
                              Debtors.                                  Chapter 11 Case

---

**NOTICE OF HEARING AND MOTION FOR ORDER AUTHORIZING USE OF
CASH COLLATERAL ON A FINAL BASIS**

---

TO:     The Parties Specified in Local Rule 9013-3(a)(2).

1.      Fenton Sub Parcel D, LLC and Bowles Sub Parcel D, LLC, ("Debtors") move the Court for the relief requested below and give notice of a hearing.

2.      The Court will hold a hearing on this motion at 9:00 a.m. on July 20, 2011 in Courtroom 8 West, United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415.

3.      Any response to this Motion must be filed and served no later than July 15, 2011, which is five days before the time set for the hearing.  **UNLESS A RESPONSE OPPOSING THE MOTION FOR FINAL ORDER IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. 5005, and Local Rule 1070-1.  This is a core proceeding.  The petitions commencing these chapter 11 cases were filed on June 29, 2011 (the "Filing Date").  The cases are now pending in this Court.

5.     This Motion arises under 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 4001(b).  This Motion is filed under Fed. R. Bankr. P. 9014 and 4001 and Local Rules 4001-2 and 9013-1 through 9013-3.

<div align="center">**RULE 4001(b)(1)(B) STATEMENT**</div>

6.     Pursuant to Fed. R. Bankr. P. 4001(b), Debtors request an order authorizing use of cash collateral consisting of rents in which Wells Fargo Bank, N.A., as trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2004-LN2 (the "Lender") holds a security interest.  Debtors will use the cash collateral to continue their operations and to either reorganize or pursue an asset sale.  Debtors request final authorization to use cash collateral through December 31, 2011.  The Lender is adequately protected by the equity cushion in the real property, as well as the Debtors' continued maintenance of the property.

<div align="center">**BACKGROUND**</div>

7.     On the Filing Date, Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

8.     Debtors have continued in possession of their assets and the management of their businesses as debtors-in-possession pursuant to Section 1107(a) and 1108 of the Bankruptcy Code.

**I.     GENERAL BACKGROUND OF THE DEBTORS.**

9.     Both Debtors are Delaware limited liability companies formed in April 2004. Both Debtors are ultimately controlled by StoneArch II/WCSE Minneapolis Industrial LLC ("StoneArch").  StoneArch is the 100% member of Bowles Subsidiary, LLC and of Fenton Subsidiary, LLC.  Bowles Subsidiary, LLC is then the 100% member of Bowles Sub Parcel D,

LLC, and Fenton Subsidiary, LLC is the 100% member of Fenton Sub Parcel D, LLC. This ownership structure is illustrated on the chart attached as <u>Exhibit A</u>.

10.     In 2007, StoneArch acquired various LLCs, which in turn owned 27 industrial multi-tenant properties located in the Twin Cities. The properties were divided into four separate pools: A, B, C, and D. The Debtors jointly own the properties in pool D (the "Pool D Properties"). Specifically, as tenants in common, Fenton Sub Parcel D, LLC has an undivided 74.5394% interest and Bowles Sub Parcel D, LLC has an undivided 25.4606% interest. Although they are two separate legal entities, the Debtors have consistently been treated as one enterprise.

11.     The Pool D Properties consist of six parcels of real property located in Anoka, Dakota, and Hennepin Counties, Minnesota. The buildings consist of office or warehouse space, and do not include any residential space. The Debtors rent space in the six buildings to a variety of business tenants. The Pool D Properties have a combined total of approximately 25 tenants, ranging from consulting firms to candle-making companies.

12.     The only source of revenue for the Debtors is rents received from tenants. The Pool D Properties currently have an average occupancy rate of approximately 80%,[1] and the Debtors receive an average of approximately $103,000 per month in rent revenue.

13.     Hoyt Properties, Inc. ("Hoyt Properties") acts as the Debtors' agent in managing the Pool D Properties. Hoyt Properties enters into contracts with vendors for the provision of services—such as sprinkler systems and window cleaning—to the Pool D Properties. All of the vendors or other creditors who supply goods or services to the Pool D Properties bill Hoyt

---

[1] This occupancy rate will likely change, because a tenant that is currently occupying an entire building is scheduled to vacate the building on June 30, 2011. However, Debtors are working to re-lease the vacated space, and have a potential tenant who would lease the entire building if certain tenant improvements are made.

Properties, which then pays the bills out of a checking account held by Hoyt Properties for the benefit of the Debtors.

## II.    THE DEBTORS' DEBT STRUCTURE.

### A.    First Mortgage Debt.

14.    The 2007 purchase was structured utilizing: (i) the assumption of pre-existing mortgage debt; (ii) preferred equity provided by WCHYP II Lender LLC and Wrightwood Capital Strategic Equity Fund I LP (together "Wrightwood"), which together owned the preferred membership units in WCSE Minneapolis Industrial Investor LLC; and (iii) equity provided by a group of individual investors who are members of StoneArch II, LLC.[2]

15.    With respect to the Pool D Properties, the original financing was provided by Nomura Credit and Capital, Inc. ("Nomura") ("First Mortgage Debt") in the amount of $11,604,000.  Pursuant to an Amended and Restated Promissory Note dated April 12, 2007 (the "Note"), Debtors assumed the First Mortgage Debt.  The Debtors currently owe approximately $10,535,364 under the Note, which matures on May 11, 2014.  The principal on the First Mortgage Debt has been paid down by over $1 million to date.

16.    The First Mortgage Debt is secured by a first priority mortgage on all of the Pool D Properties pursuant to an Amended and Restated Mortgage and Security Agreement dated April 12, 2004 (the "Mortgage"), which the Debtors assumed.  Because the Mortgage is cross-collateralized by all six Pool D Properties, properties within pool D may not be sold individually. However, all of the Pool D Properties may be sold at one time, and the Mortgage allows the sale and assumption of the First Mortgage Debt by a purchaser.

---

[2] All of Wrightwoods' interests in WCSE Minneapolis Industrial Investor LLC, which holds 71.8% of the membership interests of StoneArch, were purchased by Steven B. Hoyt ("Mr. Hoyt") on March 31, 2008 with a credit facility provided by Commerce Bank.

17.     The First Mortgage Debt is also secured by an assignment of leases and rents (the "Assignment of Leases").  In addition, pursuant to a Cash Management Agreement dated April 12, 2004, portions of the Debtors' monthly debt service payments are placed into an escrow account for taxes and insurance, as well as the following separate reserve accounts: tenant improvements and leasing commissions (TI/LC) reserve, repair reserve, replacement reserve, and debt service reserve (collectively, the "Reserve Accounts").  The escrow and reserve accounts are held by either the servicer or the special servicer of the First Mortgage Debt.

18.     On or around August 20, 2004, Nomura endorsed the promissory note and assigned the Mortgage and the Assignment of Leases to Wells Fargo Bank, N.A., as trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2004-LN2 (the "Lender").  Berkadia Commercial Mortgage LLC was chosen to be the servicer of the First Mortgage Debt.  In approximately November 2010, CWCapital Asset Management LLC began acting as the special servicer (the "Special Servicer").

19.     The Debtors were current with all payment obligations to Lender on the First Mortgage Debt through and including the month of March 2011, and made a partial payment in April 2011.  No further payments have been made.

**B.      The Hoyt Loan Indebtedness.**

20.     Following the acquisition of the Pool D Properties and assumption of the Note and Mortgage, the Debtors have periodically required additional funds for various needs such as capital expenditures, tenant improvements, and leasing commissions.  Mr. Hoyt, as an individual with indirect ownership of a portion of the Debtors, has loaned such needed funds to the Debtors – and to the owners of the pools A, B, and C properties – in a total amount of approximately

$3,566,788 (the "Hoyt Loan Indebtedness"). Of the Hoyt Loan Indebtedness, $1,319,712 is secured by a second priority mortgage on all the Pool D Properties pursuant to a mortgage dated April 27, 2011.

## II.   THE MULCAHY LITIGATION.

21.     The purpose of the 2007 purchase of the pool A, B, C, and D properties was to improve the quality and quantity of the rent roll for the properties, then to refinance or sell the properties at a profit. Within eight months, there were agreements in place for the sale of a variety of properties in different pools, with a loan to be provided by Associated Bank to fund the refinancing gap. However, due to its own internal issues, Associated Bank did not provide the loan and the closings on the purchase agreements could not occur. All of the purchase agreements in other pools were voluntarily terminated by the purchasers, but the party to the one purchase agreement for pool D would not agree to terminate the agreement, leading to the Mulcahy litigation described below.

22.     In August 2007, Debtors entered into a purchase agreement (the "Cahill Purchase Agreement"), pursuant to which they agreed to sell a commercial office building of approximately 60,082 square feet located at 7667 Cahill Road, Edina (the "Cahill Building") to Tim Mulcahy ("Mr. Mulcahy").

23.     The purchase price in the Cahill Purchase Agreement was $4,000,000. Pursuant to the Cahill Purchase Agreement, Mr. Mulcahy delivered $50,000 (the "Earnest Money") into an interest bearing escrow account.

24.     As with the other Pool D Properties, the Cahill Building was encumbered with the Mortgage securing the First Mortgage Debt. The Note provides that the Pool D Properties, in total but not individually, may be released from the Mortgage lien through a process known as

"defeasance." The Cahill Purchase Agreement required that the Debtors work diligently to pursue defeasance.

25. Due to the failure of the Associated Bank loan described above, the Debtors did not obtain defeasance, and the Cahill Purchase Agreement was not closed.

26. Mr. Mulcahy refused to voluntarily terminate the Cahill Purchase Agreement, and initiated an action against the Debtors in Hennepin County District Court,[3] claiming: (i) fraud by misrepresentation, and (ii) a right to specific performance based on Debtors' default under the Cahill Purchase Agreement. Mr. Mulcahy's claim of fraud by misrepresentation was tried and submitted to a jury. On March 2, 2009, the jury rendered its verdict finding no fraud by misrepresentation on the part of the Debtors.

27. Mr. Mulcahy's claim for specific performance was tried to the court. In its Findings of Fact, Conclusions of Law and Order dated June 18, 2009, the Hennepin County District Court held that Debtors had defaulted in performing their obligations under the Cahill Purchase Agreement, and ordered specific performance. In its Supplement to Findings of Fact, Conclusions of Law and Order for Judgment dated November 6, 2009, the court ordered to Debtors to convey to Mr. Mulcahy a limited warranty deed without exception for the mortgage for the Cahill Building. The court also ordered that the purchase price of $4,000,000 was to be reduced by the $50,000 earnest money deposit, as well as by an equitable money offset for certain amounts—for example, the amount of rent received from tenants of the Cahill Building from after the scheduled January 14, 2008 closing date to the date of the actual closing.

---

[3] Hennepin County Court File No. 27-CV-08-598.

28.     Both Mr. Mulcahy and Debtors appealed a number of issues.  On October 26, 2010, the Minnesota Court of Appeals affirmed the Hennepin County District Court.[4]

29.     In its Third Supplement to Findings of Fact, Conclusions of Law and Order for Amended Judgment dated April 28, 2011, the Hennepin County District Court ordered that the closing occur on or before May 13, 2011.

30.     The closing on the Cahill Purchase Agreement has not yet taken place due to complications arising from the fact that partial defeasance—prepayment of less than 100% of the Note and release of less than 100% of the lien on the Pool D Properties—is not allowed under the Mortgage.

31.     In their continuing efforts to close on the Cahill Purchase Agreement, Debtors voluntarily referred the defeasance matter to the Special Servicer in November 2010.  The Special Servicer is allowed to make extraordinary decisions, such as agreeing to partial defeasance.  Debtors and the Special Servicer have been negotiating the terms of a potential partial defeasance.  The Special Servicer has issued a proposal for partial defeasance, but the Debtors have not yet been able to meet the terms of the proposal.  Based on the Debtors' current inability to meet the terms of the Special Servicer's proposal and because of more recent defaults by the Debtors, the Special Servicer has declared that it is accelerating the debt such that all amounts owed under the First Mortgage Debt are now due and payable.  The Special Servicer has also threatened foreclosure on the Pool D Properties.

32.     In the meantime, Mr. Mulcahy has filed a motion for an order to show cause regarding the Debtors' failure to comply with the court's most recent order for specific performance.  The hearing on the order to show cause has been scheduled for July 8, 2011.

---

[4] <u>Mulcahy v. Fenton Sub Parcel D, LLC</u>, No. A10-23, 2010 WL 4181263 (Minn. Ct. App. Oct. 26, 2010).

33.     The Debtors' filings were necessitated by the acceleration of the debt and threatened foreclosure on the Pool D Properties and the inability of the Debtors to close on the Cahill Purchase Agreement.  The Debtors believe that a chapter 11 bankruptcy will provide the needed breathing room and structure to propose and confirm a chapter 11 plan of reorganization including among other things (a) defeasance or sales of some or all of the Pool D Properties with sufficient proceeds to pay the First Mortgage Debt and all other valid claims, and (b) resolution of the rights, if any, of Mr. Mulcahy either by agreement of the parties or by the application of bankruptcy law.

## PREPETITION SECURED DEBT STRUCTURE

34.     The Debtors' indebtedness to Lender on the First Mortgage Debt and the Lender's security for the First Mortgage Debt are described in detail above.

35.     The Lender appears to have perfected its interest in the Mortgage, Assignment of Leases, and other assets of the Debtors by causing the documents to be recorded in Minnesota as set forth on the chart attached as Exhibit B, and by causing a financing statement to be filed with the Delaware Secretary of State as Document No. 2011 1858300.  As noted above, the current unpaid balance of the First Mortgage Debt is approximately $10,535,364.

36.     The facts set forth above also describe that the Hoyt Loan Indebtedness is partially secured by a second priority mortgage on all the Pool D Properties.  Mr. Hoyt appears to have perfected his mortgage by causing it to be recorded with the: (i) Anoka County recorder on May 16, 2011 as Document No. 2022263.002; (ii) Dakota County Recorder on May 20, 2011 as Document No. 2801755; (iii) Hennepin County Registrar of Titles on May 13, 2011 as Document No. T4856664; and (iv) Hennepin County Recorder on May 13, 2011 as Document

No. A9654125.  Because Mr. Hoyt does not have an interest in the cash collateral which the Debtors propose to use in this motion, his interests are not affected by this motion.

<div align="center">**COLLATERAL VALUE**</div>

37.     As noted above, the Pool D Properties have an average occupancy rate of approximately 80%.  With that occupancy rate, the Pool D Properties achieve an average monthly rental income of approximately $103,000.  An appraisal from November 2006 estimates that the Pool D Properties were worth approximately $15,500,000 at that time.  In today's market, Debtors value the Pool D Properties by using an estimation based on the stabilized rental income of the Pool D Properties multiplied by a 9.5% capitalization rate on the rental income, which results in the Pool D Properties being worth approximately $13,135,656 as of the Filing Date.  The estimated value of each Pool D Property is set forth on the collateral value projection attached as Exhibit C.

38.     In addition, the Lender holds a security interest in other assets of the Debtors, including funds from rent payments, security deposits, deposits to utilities, the Reserve Accounts, and accounts receivable of the Debtors.  The estimated value of this collateral is set forth on Exhibit C, and together with the Pool D Properties, exceeds $14.5 million.

39.     Based on the above-described figures and the amounts set forth on the attached exhibits, Debtors believe that Lender has an equity cushion of approximately 38.5% in its collateral as of the Filing Date.  The Debtors acknowledge that there will be a temporary income interruption due to the tenant vacating the Penn Building at the end of June 2011, and that rent received from a replacement tenant may be decreased to account for required tenant improvements.  However, the Debtors' estimation of the overall value of the Penn Building is unaffected, as the value is based on an assumption of stabilized income.  In addition, the Debtors

are in negotiations with a potential tenant for a seven year lease of the entire Penn Building; if that transaction is not consummated, the Debtors will continue efforts to identify a replacement tenant. Thus, the Debtors do not believe that the equity cushion will ultimately be impacted by the temporary vacancy of the Penn Building.

## CASH NEEDS

40.     Debtors seek authorization to use the cash collateral consisting of rents existing as of the Filing Date, and future rents in which the Lender claims an interest, in order to pay expenses in accordance with the cash flow projections and budget attached as Exhibit D (the "Budget"). The Debtors will be able to abstain from paying any expenses until late in the week ending July 15, 2011. Beginning then and going through December 31, 2011, Debtors must have access to the rents to pay normal and customary operating expenses such as utilities, vendors, other service providers, and taxes and insurance, as well as the costs of administration of the bankruptcy case such as professional fees and U.S. Trustee fees.

41.     Debtors will generate cash from collection of rents from tenants and such cash will be used to maintain the real estate for the benefit of the lenders and tenants. As set forth in the Budget, Debtors project that such rents will be sufficient to fund its Chapter 11 administrative expenses, including postpetition operating expenses.[5]

## ADEQUATE PROTECTION

42.     To adequately protect the Lender's interests, Debtors note that Lender has a continuing security interest in all post-petition rents pursuant to section 552 of the Bankruptcy

---

[5] Although the Budget shows a negative net operating income in the months of August and October 2011, other months are projected to generate enough income to cover those shortfalls. In addition, the scheduled maintenance for August could be deferred or the payments on the maintenance (or possibly other scheduled payments) could be deferred or spread out to alleviate the shortfall.

Code. Debtors intend to use such rents to maintain the property, which in itself is a form of adequate protection, and to generate the right to receive subsequent rents from the tenants as well as to seek new tenants or replacement tenants. Debtors will also use the rent proceeds to pay post-petition expenses such as real estate taxes as they come due. Such taxes, if unpaid, would otherwise have priority over the lien of the Lender.

43.     As additional adequate protection, the Lender has an equity cushion in its collateral of approximately 38.5% as of the Filing Date.

44.     Prior to the hearing on this Motion, Debtors may enter into a stipulation or agreed order with the Lender concerning use of cash collateral, adequate protection, and other related matters. In the event Debtors enter into any such stipulation, they will seek approval of the stipulation without further notice or hearing pursuant to Bankruptcy Rule 4001(d)(4), and **DEBTORS HEREBY GIVE NOTICE OF INTENT TO SEEK APPROVAL OF ANY SUCH STIPULATION OR AGREED ORDER.**

45.     Pursuant to Local Rule 9013-2(a), this Motion is verified and is accompanied by a Memorandum, Proposed Orders and proof of service.

46.     Pursuant to Local Rule 9013-2(c), Debtors give notice that they may, if an evidentiary hearing is required, call Steven B. Hoyt, the Chief Manager of both Debtors, to testify at the hearing on the motion. The business address of the proposed witness is 275 Market Street, Suite 439, Minneapolis, MN 55405.

WHEREFORE, Debtors move the Court for an order granting:

(a)     Their Motion for a final order authorizing final use of cash collateral through December 31, 2011; and

(b)     Such other and further relief as the Court deems just and equitable.

Dated:  June 30, 2011

/e/ Cynthia A. Moyer
James L. Baillie (#3980)
Cynthia A. Moyer (#211229)
Sarah M. Gibbs (#390238)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis MN 55402
(612) 492-7000
(612) 492-7077  fax
jbaillie@fredlaw.com
cmoyer@fredlaw.com
sgibbs@fredlaw.com

PROPOSED ATTORNEYS FOR DEBTORS

4945502

## **VERIFICATION**

I, Steven B. Hoyt, am the Chief Manager of both of the Debtors. I declare under penalty of perjury that the facts set forth in the preceding Motion are true and correct to the best of my knowledge, information and belief.

Dated: June 29, 2011

Signed: _____
Steven B. Hoyt

4823822

**EXHIBIT A**



STEVEN B. HOYT (100%)
STEVEN B. HOYT (20%) & INVESTORS (80% collectively, none > 20%)
WCSE MINNEAPOLIS INDUSTRIAL INVESTOR LLC, a DE LLC (71.8%)
STONEARCH II, LLC a MN LLC (28.2%)
StoneArch II/ WCSE Minneapolis Industrial LLC, a DE LLC
Fenton Subsidiary, LLC a DE LLC
Bowles Subsidiary, LLC a DE LLC
Fenton Sub Parcel A, LLC, a DE LLC (undivided 74.5394% interest)
SUB PARCEL A (5 Properties)
Bowles Sub Parcel A, LLC, a DE LLC (undivided 25.4606% interest)
Fenton Sub Parcel B, LLC, a DE LLC (undivided 74.5394% interest)
SUB PARCEL B (3 Properties)
Bowles Sub Parcel B, LLC, a DE LLC (undivided 25.4606% interest)
Fenton Sub Parcel C, LLC, a DE LLC (undivided 74.5394% interest)
SUB PARCEL C (8 Properties)
Bowles Sub Parcel C, LLC, a DE LLC (undivided 25.4606% interest)
Fenton Sub Parcel D, LLC, a DE LLC (undivided 74.5394% interest)
SUB PARCEL D (6 Properties)
Bowles Sub Parcel D, LLC, a DE LLC (undivided 25.4606% interest)

4951525

**EXHIBIT B**

| **Mortgage and Security Agreement, effective as of 12/23/2003 (in favor of Nomura Credit & Capital, Inc.)** | | |
|---|---|---|
| Recording Office | Date | Document Number |
| Hennepin Co. Registrar of Titles | 01/02/04 | 3901500 |
| Hennepin Co. Recorder | 01/02/04 | 8265771 |
| Dakota Co. Recorder | 01/06/04 | 2160881 |
| Anoka Co. Recorder | 01/05/04 | 1886845 |
| **Restated Mortgage and Security Agreement, dated 4/12/2004 (in favor of Nomura Credit & Capital, Inc.)** | | |
| Hennepin Co. Registrar of Titles | 06/14/04 | 3976378 |
| Hennepin Co. Recorder | 06/10/04 | 8374467 |
| Dakota Co. Recorder | 06/07/04 | 2212860 |
| Anoka Co. Recorder | 05/26/04 | 1926066 |
| **Assumption and Modification Agreement, dated 4/12/2004** | | |
| Hennepin Co. Registrar of Titles | 06/14/04 | 3976385 |
| Hennepin Co. Recorder | 06/10/04 | 8374474 |
| Dakota Co. Recorder | 06/07/04 | 2212867 |
| Anoka Co. Recorder | 05/26/04 | 1926069 |
| **Amended and Restated Mortgage and Security Agreement, dated 4/12/2004 (in favor of Nomura Credit & Capital, Inc.)** | | |
| Hennepin Co. Registrar of Titles | 06/14/04 | 3976392 |
| Hennepin Co. Recorder | 06/10/04 | 8374481 |
| Dakota Co. Recorder | 06/07/04 | 2212877 |
| Anoka Co. Recorder | 05/26/04 | 1926070 |

| Assignment of Amended and Restated Mortgage and Security Agreement; and Assignment of Amended and Restated Assignment of Leases and Rents, dated 8/20/2004 (in favor of Wells Fargo Bank, N.A., as trustee) | | |
|---|---|---|
| Recording Office | Date | Document Number |
| Hennepin Co. Registrar of Titles | 01/10/05 | 4063855 |
| Hennepin Co. Recorder | 01/10/05 | 8505567 |
| Dakota Co. Recorder | 03/17/05 | 2305008 |
| Anoka Co. Recorder | 03/17/05 | 1975340.023 |

| **Assignment of Leases and Rents, effective as of 12/23/2003 (in favor of Nomura Credit & Capital, Inc.)** | | |
|---|---|---|
| Recording Office | Date | Document Number |
| Hennepin Co. Registrar of Titles | 01/02/04 | 3901501 |
| Hennepin Co. Recorder | 01/02/04 | 8265772 |
| Dakota Co. Recorder | 01/06/04 | 2160882 |
| Anoka Co. Recorder | 01/05/04 | 1886846 |
| **Restated Assignment of Rents and Leases, dated 4/12/2004 (in favor of Nomura Credit & Capital, Inc.)** | | |
| Hennepin Co. Registrar of Titles | 06/14/04 | 3976381 |
| Hennepin Co. Recorder | 06/10/04 | 8374470 |
| Dakota Co. Recorder | 06/07/04 | 2212863 |
| Anoka Co. Recorder | 05/26/04 | 1926067 |
| **Assumption and Modification Agreement, dated 4/12/2004** | | |
| See recording information above | | |
| **Amended and Restated Assignment of Rents and Leases, dated 4/12/2004 (in favor of Nomura Credit & Capital, Inc.)** | | |
| Hennepin Co. Registrar of Titles | 06/14/04 | 3976393 |
| Hennepin Co. Recorder | 06/10/04 | 8374482 |
| Dakota Co. Recorder | 06/07/04 | 2212878 |
| Anoka Co. Recorder | 05/26/04 | 1926071 |
| **Assignment of Amended and Restated Mortgage and Security Agreement; and Assignment of Amended and Restated Assignment of Leases and Rents, dated 8/20/2004 (in favor of Wells Fargo Bank, N.A., as trustee)** | | |
| See recording information above | | |

**UCC Fixture Financing Statement showing Fenton Subsidiary, LLC and Bowles Subsidiary, LLC as debtor (in favor of Nomura Credit & Capital, Inc.)**

| Recording Office | Date | Document Number |
|---|---|---|
| Hennepin Co. Registrar of Titles | 01/02/04 | 3901502 |
| Hennepin Co. Recorder | 01/02/04 | 8265773 |
| Dakota Co. Recorder | 01/06/04 | 2160883 |
| Anoka Co. Recorder | 01/05/04 | 1886847 |

**UCC Fixture Financing Statement showing Fenton Sub Parcel D, LLC and Bowles Sub Parcel D, LLC as debtor (in favor of Nomura Credit & Capital, Inc.)**

| Recording Office | Date | Document Number |
|---|---|---|
| Hennepin Co. Registrar of Titles | 06/14/04 | 3976394 |
| Hennepin Co. Recorder | 06/10/04 | 8374483 |
| Dakota Co. Recorder | 06/07/04 | 2212879 |
| Anoka Co. Recorder | 05/56/04 | 1926072 |

**Assignment of UCC Fixture Financing Statement showing Fenton Sub Parcel D, LLC and Bowles Sub Parcel D, LLC as debtor (in favor of Wells Fargo Bank, N.A., as trustee)**

| Recording Office | Date | Document Number |
|---|---|---|
| Hennepin Co. Registrar of Titles | 12/30/04 | 4059534 |
| Hennepin Co. Recorder | 01/05/05 | 8502988 |
| Dakota Co. Recorder | 01/24/05 | 2287590 |
| Anoka Co. Recorder | 03/17/05 | 1971695.023 |

**EXHIBIT C**

**FENTON SUB PARCEL D, LLC and BOWLES SUB PARCEL D, LLC**

**COLLATERAL VALUE PROJECTION**

| DEBT | COLLATERAL | VALUE OF COLLATERAL (as of Petition Date) | ANTICIPATED VALUE OF COLLATERAL (as of December 31, 2011) |
|---|---|---|---|
| First Mortgage Debt with outstanding balance of approximately $10,535,364 | BASS LAKE ROAD 5701 International Pkwy, New Hope, MN | $ 1,298,125.00 | $ 1,298,125.00 |
| | CAHILL BUSINESS CENTER 7667 Cahill Road, Edina, MN | $ 3,400,000.00 | $ 3,400,000.00 |
| | LARC INDUSTRIAL PARK III 1300 & 1320 Larc Ind. Blvd., Burnsville, MN | $ 1,754,745.00 | $ 1,754,745.00 |
| | LARC INDUSTRIAL PARK VII 11901 Larc Ind. Blvd., Burnsville, MN | $ 1,407,805.00 | $ 1,407,805.00 |
| | PENN CORPORATE 9655 Penn Ave S, Bloomington, MN | $ 2,119,158.00 | $ 2,119,158.00 |
| | UNIVERSITY CENTER I 7976-7990 University Ave, Fridley, MN and UNIVERSITY CENTER II 7920-7954 University Ave, Fridley, MN | $ 3,155,823.00 | $ 3,155,823.00 |
| | Funds in Crown Bank account ending in 1921 | $ 89,231.00 | $ 19,676.97 |
| | Berkadia TI/LC Reserve Account* | $ 73,539.00 | $ 73,539.00 |
| | Berkadia Repair Reserve Account* | $ 13,891.00 | $ 13,891.00 |
| | Berkadia Replacement Reserve Account* | $ 62,445.00 | $ 62,445.00 |
| | Berkadia Debt Service Reserve Account* | $ 183,636.00 | $ 183,636.00 |
| | Berkadia Tax and Insurance Escrow Reserve Account* | $ 278,336.00 | $ 278,336.00 |
| | Deposit with Xcel Energy | $ 412.00 | $ 412.00 |
| | Judgment against Charles White Inc. | $ 717,152.62 | $ 717,152.62 |
| | General accounts receivable | $ 12,588.39 | $ - |
| | Amount owed by Bowles Sub Parcel A, LLC and Fenton Sub Parcel A, LLC | $ 29,080.53 | $ - |

TOTALS: $ 14,595,967.54    $ 14,484,744.59

*These amounts are as of 03/31/11, the most recent information the Debtors possess

|  |  | Debt | Collateral |
|---|---|---|---|
| Notes: | Fenton Sub Parcel D, LLC owns undivided 74.5394% = | $ 7,852,997.11 | $ 10,879,746.63 |
| | Bowles Sub Parcel D, LLC owns undivided 25.4606% = | $ 2,682,366.89 | $ 3,716,220.91 |

**EXHIBIT D**

# Fenton Sub Parcel D, LLC & Bowles Sub Parcel D, LLC: Cash Flow Projection

| Income: | July 2011 | Aug 2011 | Sept 2011 | Oct 2011 | Nov 2011 | Dec 2011 | Total |
|---|---|---|---|---|---|---|---|
| Rent Income | $ 62,589.54 | $ 60,290.54 | $ 60,562.10 | $ 60,638.89 | $ 63,024.84 | $ 62,577.21 | 369,683.12 |
| Parking Income | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CAM Income-Operating Expenses | $ 20,982.61 | $ 20,982.61 | $ 20,982.61 | $ 20,982.61 | $ 20,982.61 | $ 20,982.61 | 125,895.66 |
| CAM Income RE Tax - Operating | $ 21,063.53 | $ 21,063.53 | $ 21,063.53 | $ 21,063.53 | $ 21,063.53 | $ 21,063.53 | 126,381.18 |
| Storage Income | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Other Misc. Income | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Income** | $ 104,635.68 | $ 102,336.68 | $ 102,608.24 | $ 102,685.03 | $ 105,070.98 | $ 104,623.35 | 621,959.96 |

## Expenses:

### Operating Expenses

| | July 2011 | Aug 2011 | Sept 2011 | Oct 2011 | Nov 2011 | Dec 2011 | Total |
|---|---|---|---|---|---|---|---|
| Electric | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 3,000.00 |
| Water/Sewer | $ 5,800.00 | $ 2,400.00 | $ 2,200.00 | $ 4,650.00 | $ 1,350.00 | $ 1,350.00 | 17,750.00 |
| Gas | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Roof Repair | $ - | $ - | $ 450.00 | $ - | $ - | $ - | $ 450.00 |
| HVAC Repair | $ 4,375.00 | $ 825.00 | $ 825.00 | $ 4,375.00 | $ 825.00 | $ 825.00 | 12,050.00 |
| Elevator Repair | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Fire Sprinkler Protection | $ 820.00 | $ 820.00 | $ 820.00 | $ 820.00 | $ 820.00 | $ 820.00 | 4,920.00 |
| Trash Removal | $ 325.00 | $ 325.00 | $ 325.00 | $ 325.00 | $ 325.00 | $ 325.00 | 1,950.00 |
| Other Repair & Maintenance | $ 2,550.00 | $ 21,094.00 | $ 2,550.00 | $ 3,010.00 | $ 2,550.00 | $ 6,254.31 | 38,008.31 |
| Exterminating | $ 490.00 | $ - | $ - | $ 490.00 | $ - | $ - | $ 980.00 |
| Signage | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Indoor Plants | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Insurance & Taxes - ESCROWED | $ 46,000.00 | $ 66,380.00 | $ 46,000.00 | $ 46,000.00 | $ 40,000.00 | $ 40,000.00 | 284,380.00 |
| Management Fees | $ 5,228.40 | $ 5,113.45 | $ 5,127.02 | $ 5,130.86 | $ 5,250.16 | $ 5,227.79 | 31,077.68 |
| Landscape/Contract Service | $ 5,850.00 | $ 5,850.00 | $ 5,850.00 | $ 5,850.00 | $ - | $ - | 23,400.00 |
| Parking Lot Maintenance | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Snow Removal | $ - | $ - | $ - | $ - | $ 11,800.00 | $ 11,800.00 | 23,600.00 |
| Parking Electric | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Janitorial Contract Services | $ 1,550.00 | $ 1,050.00 | $ 1,050.00 | $ 2,450.00 | $ 1,050.00 | $ 1,050.00 | 8,200.00 |
| | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Operating Expenses** | $ 73,488.40 | $ 104,357.45 | $ 65,697.02 | $ 73,600.86 | $ 64,470.16 | $ 68,152.10 | 449,765.99 |

### Non-Recoverable Expenses

| | July 2011 | Aug 2011 | Sept 2011 | Oct 2011 | Nov 2011 | Dec 2011 | Total |
|---|---|---|---|---|---|---|---|
| Other Repair & Maintenance | $ - | $ - | $ 600.00 | $ 600.00 | $ 600.00 | $ 900.00 | $ 2,700.00 |
| Electric - Vacancy | $ 4,660.00 | $ 4,660.00 | $ 4,660.00 | $ 4,660.00 | $ 4,660.00 | $ 4,660.00 | 27,960.00 |
| Gas - Vacancy | $ 600.00 | $ 600.00 | $ 600.00 | $ 9,319.00 | $ 9,319.00 | $ 9,319.00 | 29,757.00 |
| Leasing & Sales Commission | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Tenant Relations | $ - | $ - | $ - | $ - | $ - | $ 2,100.00 | 2,100.00 |
| Office of US Trustee Fees | $ 650.00 | $ - | $ - | $ 4,875.00 | $ - | $ - | |
| Legal Fees - Bankruptcy | $ 15,000.00 | $ 15,000.00 | $ 15,000.00 | $ 15,000.00 | $ 15,000.00 | $ 15,000.00 | 90,000.00 |
| Architectural/Space Planning | $ - | $ - | $ - | $ - | $ - | $ - | |
| **Total Non-Recoverable Expenses** | $ 20,910.00 | $ 20,260.00 | $ 20,860.00 | $ 34,454.00 | $ 29,579.00 | $ 31,979.00 | 152,517.00 |
| **Total Expenses** | $ 94,398.40 | $ 124,617.45 | $ 86,557.02 | $ 108,054.86 | $ 94,049.16 | $ 100,131.10 | 607,807.99 |
| **Net Operating Income** | $ 10,237.28 | $ (22,280.77) | $ 16,051.22 | $ (5,369.83) | $ 11,021.82 | $ 4,492.25 | 14,151.97 |

### Debt Service

| | July 2011 | Aug 2011 | Sept 2011 | Oct 2011 | Nov 2011 | Dec 2011 | Total |
|---|---|---|---|---|---|---|---|
| Berkadia Principal Reduction | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Berkadia Interest Debt Service | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Berkadia Reserves | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | | | | | | $ - |
| **Total Debt Service** | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **NOI After Debt Service** | $ 10,237.28 | $ (22,280.77) | $ 16,051.22 | $ (5,369.83) | $ 11,021.82 | $ 4,492.25 | 14,151.97 |

In re:

| | |
|---|---|
| Fenton Sub Parcel D, LLC | Case No. BKY 11-44430 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Bowles Sub Parcel D, LLC | Case No. BKY 11-44434 |
| Debtors. | Chapter 11 Case |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL ON A FINAL BASIS**

The Debtors, as debtors-in-possession, move the Court for entry of an order authorizing the Debtors to use cash collateral on a final basis. The supporting facts are set forth in the verified Motion. All capitalized terms have the meaning ascribed to them in the Motion.

**THE COURT SHOULD AUTHORIZE DEBTORS' PROPOSED
USE OF CASH COLLATERAL ON AN INTERIM AND FINAL BASIS.**

The Bankruptcy Code provides that a debtor-in-possession may use cash collateral only with the secured creditor's consent or if the court, after notice and a hearing, authorizes such use. See 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that the Court must provide the secured creditor with adequate protection of its interest upon request of the creditor. The Eighth Circuit Court of Appeals has reasoned that:

> In any given case, the Bankruptcy Court must necessarily (1) establish the value of the secured creditor's interest, (2) identify the risk to the secured creditor's value resulting from the Debtor's request for use of cash collateral, and (3) determine whether the Debtor's adequate protection proposal protects values as nearly as possible against risk to that value consistent with the concept of indubitable equivalence.

In re Martin, 761 F.2d 472, 476-77 (8th Cir. 1985).

Pursuant to <u>Martin</u>, the first step is to establish the value of the secured creditor's interest. For purposes of this motion, the value of the creditor's interest is determined by what the creditor could recover if the collateral were disposed of in the most commercially reasonable manner practicable.  <u>In re Boring</u>, 91 B.R. 791, 795 (Bankr. S.D. Ohio 1988); <u>United States v. Smithfield Estates, Inc.</u>, 48 B.R. 910, 912 (Bankr. D.R.I. 1985).

As of the Filing Date, the Debtors' obligation to Lender under the First Mortgage Debt totaled approximately $10,535,364.  On the same day, the value of the Lender's collateral was approximately $14,595,967.54.  This gives Lender an equity cushion of approximately 38.5%. Hence, there is sufficient equity to protect the Lender's interests.

The second requirement of <u>Martin</u> requires the court to identify the risk to the secured creditor's value resulting from the debtor's request for use of cash collateral.  In the instant case, such risk would be that the Debtors might fail to generate sufficient replacement cash collateral to compensate for use of existing cash collateral.  In this case, that risk is minimal.  Because Debtors' tenants generally sign leases and pay on a monthly basis, Debtors can project attrition, income and expenses with reasonable accuracy.  In this case, Debtors have factored into the Budget the anticipated decrease in rent due to one tenant's intent to vacate its leased space on June 30, 2011.  Debtors hope to quickly re-lease that space, which would result in greater rental income than that shown on the Budget.   In addition, Debtors project that the Lenders' total collateral value will remain steady through December 31, 2011, may in fact increase, and will continue to significantly exceed the amount of the First Mortgage Debt.

The third requirement of <u>Martin</u> calls for the Court to examine the debtor's adequate protection proposal to determine that the proposal protects the value of the Bank's interest, if any, in the cash collateral relative to the risk to such value.  See <u>Martin</u>, 761 F.2d at 477.  Here,

the Debtors note that the Lender has a continuing security interest in all post-petition rents pursuant to section 552 of the Bankruptcy Code. Debtors intend to use such rents to maintain the Pool D Properties, which in itself is a form of adequate protection. Finally, the equity cushion of approximately 38.5% is more than sufficient to provide adequate protection of the value of the Lender's interest in the Pool D Properties. *See, e.g.*, *In re Johnson*, 90 B.R. 973, 979-80 (Bankr. D. Minn. 1988) (holding that when the value of collateral is well in excess of a secured creditors' claim, the equity cushion alone constitutes adequate protection; *In re Kost*, 102 B.R. 829, 831 (D. Wyo. 1989) (collecting cases and describing how equity cushions in excess of 20 percent are generally held to provide adequate protection).

## CONCLUSION

For all the foregoing reasons, Debtors respectfully request that the Court enter an order granting the relief requested in the Motion.

Dated: June 30, 2011

   */e/ Cynthia A. Moyer*
James L. Baillie (#3980)
Cynthia A. Moyer (#211229)
Sarah M. Gibbs (#390238)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis MN 55402
(612) 492-7000
(612) 492-7077  fax
jbaillie@fredlaw.com
cmoyer@fredlaw.com
sgibbs@fredlaw.com

PROPOSED ATTORNEYS FOR DEBTORS

4945552

In re:

Fenton Sub Parcel D, LLC                                    Case No. BKY 11-44430
                              Debtor.                              Chapter 11 Case

---

Bowles Sub Parcel D, LLC                                    Case No. BKY 11-44434
                              Debtors.                             Chapter 11 Case

---

## CERTIFICATE OF SERVICE

---

Cynthia A. Moyer, under penalty of perjury, states that on June 30, 2011, she caused to be served the following:

1.  **Notice of Hearing and Motion for Order Authorizing Maintenance of Existing Bank Accounts and Check Stock;**

2.  Memorandum of Law in Support of Motion for Order Authorizing Maintenance of Existing Bank Accounts and Check Stock;

3.  Proposed Order;

4.  **Notice of Hearing and Motion for Order Authorizing Use of Cash Collateral on a Final Basis;**

5.  Memorandum of Law in Support of Motion for Order Authorizing Use of Cash Collateral on a Final Basis;

6.  Proposed Order;

7.  **Notice of Hearing and Motion for Order Authorizing Joint Administration of Cases;**

8.  Memorandum of Law in Support of Motion for Order Authorizing Joint Administration of Cases;

9.  Proposed Order;

10. **Declaration of Relatedness of Chapter 11 Cases; and**

11.    Certificate of Service.

by sending true and correct copies to the parties on the attached service list.


Dated:  June 30, 2011            _/e/ Cynthia A. Moyer_____
                                 Cynthia A. Moyer


4952473_1

Fenton Sub Parcel D, LLC and Bowles Sub Parcel D, LLC
Service List
Bky Case Nos. 11-44430; 11-44434
Served via Federal Express Overnight Delivery, except those parties whose contact information includes an e-mail
address were served via CM/ECF or e-mail

## U.S. TRUSTEE AND OTHER REQUIRED PARTIES

*Trustee*
U.S. Trustee's Office
1015 US Courthouse
300 South Fourth Street
Minneapolis, MN 55415
ustpregion12.mn.ecf@usdoj.gov

IRS District Counsel
380 Jackson St, Ste 650
St Paul, MN  55101-4804

Internal Revenue Service
Central Insolvency Operation
PO Box 7346
Philadelphia, PA 19101-7346

***ADDRESS FOR FEDERAL EXPRESS***
Internal Revenue Service
Central Insolvency Operation
2970 Market Street
Mail Stop 5-Q30.133
Philadelphia, PA 19104-5016

MN Department of Revenue
Collection Enforcement
551 Bankruptcy Section
600 North Robert Street
St Paul, MN 55101-2228

Office of the U.S. Attorney
600 US Courthouse
300 S Fourth St
Minneapolis, MN  55415

Minnesota Department of
Economic Security
332 Minnesota Street
St. Paul, MN  55101-1351

## DEBTORS

Fenton Sub Parcel D, LLC
275 Market St., Suite 439
Minneapolis, MN 55405
SteveH@hoytproperties.com
SusanH@hoytproperties.com

Bowles Sub Parcel D, LLC
275 Market St., Suite 439
Minneapolis, MN 55405
SteveH@hoytproperties.com
SusanH@hoytproperties.com

## SECURED CREDITORS, REQUESTS FOR NOTICE, AND OTHER INTERESTED PARTIES

*CWCapital Asset Management LLC* (as special servicer for Wells
Fargo Bank, N.A., trustee)
7501 Wisconsin Ave., Suite 500
Bethesda, MD 20814

Steven B. Hoyt
275 Market St., Suite 439
Minneapolis, MN 55405
SteveH@hoytproperties.com

Tim Mulcahy
c/o Timothy M. Kelley, Esq.
Scott Harris, Esq.
Leonard Street & Deinard
150 S. Fifth St., Suite 2300
Minneapolis, MN 55402
timothy.kelley@leonard.com
scott.harris@leonard.com

## 10 LARGEST UNSECURED CREDITORS

*Messerli & Kramer P.A.*
Jay Simons
100 S Fifth St., Suite 1400
Minneapolis, MN 55402
jsimons@messerlikramer.com

*Anthony Ostlund Baer & Louwagi*
Vincent D. Louwagi
90 S. Seventh St., Suite 3600
Minneapolis, MN 55402
Vlouwagi@aoblaw.com

Curbside Lawn Care
c/o Dave Leffler
9084 Windsor Court
Savage, MN 55378
DaveL@curbsidelawn.com

Cameron Law Office
c/o John Cameron
33 S Sixth Street, Suite 4100
Minneapolis, MN 55402
John@Cameronlawoffice.com

United Operations, Inc.
c/o Paul Daily
1740 Annapolis Ln N
Minneapolis, MN 55441
PaulD@unitedoperations.com

Integra Telecom
PO Box 2966
Milwaukee, MN WI  53201

Centerpoint Energy
PO Box 1144
Minneapolis, MN 55440

City of Bloomington – Water
1800 W. Old Shakopee Rd
Minneapolis, MN 55431

Xcel Energy
PO Box 9477
Minneapolis, MN 55472

4952473_1

In re:

| | |
|---|---|
| Fenton Sub Parcel D, LLC | Case No. BKY 11-44430 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Bowles Sub Parcel D, LLC | Case No. BKY 11-44434 |
| Debtors. | Chapter 11 Case |

## ORDER AUTHORIZING USE OF CASH COLLATERAL ON A FINAL BASIS

This matter is before the Court on the debtors' Motion for Order Authorizing Use of Cash Collateral on a Final Basis ("Motion").

Based on the Motion, all the files, records and proceedings herein, the Court having being advised in the premises, and the Court's findings of fact and conclusions of law, if any, having been stated orally and recorded in open court following the close of evidence,

IT IS HEREBY ORDERED:

1.     Debtors are authorized to use cash collateral, including rents, that may be subject to the lien of Wells Fargo Bank, N.A., as trustee for the registered holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2004-LN2 (the "Lender"), consistent with the projections attached to the Motion, through December 31, 2011.

2.     The Debtors shall maintain insurance on the six parcels of real estate they own (the "Properties").

3.     The Debtors shall pay all real estate taxes on the Properties as they become due.

4.     The Debtors shall continue to maintain the Properties to their current standards.

5.    The Debtors shall make records regarding rent rolls and other matters available to the Lender, or any servicer or special servicer appointed by the Lender, on reasonable request.

Dated: _____    _____
Robert J. Kressel
United States Bankruptcy Judge

4945558